## RAINEY *vs.* RAINEY.

[BILL IN EQUITY FOR REMOVAL OF HUSBAND FROM TRUSTEESHIP OF WIFE'S SEPARATE ESTATE, AND INJUNCTION OF ACTION AT LAW BY HIM.]

1. *Effect of unsworn answer as evidence.*—On motion to dissolve an injunction, an answer not under oath cannot be regarded as evidence, a sworn answer having been waived by the complainant.

2. *When wife may come into equity.*—A married woman, having a separate estate created by law, may come into equity, (Code, § § 1994–96,) to have her husband removed from the trusteeship of her estate, and to enjoin him from proceeding at law to recover her property ; *secus*, as to slaves conveyed to her separate use by deed, where the deed confers on her trustee the legal right to the possession, custody and management of the slaves.

3. *Construction of deed of gift as to powers of wife's trustee.*—A deed of gift, by which slaves are conveyed to a trustee, " upon special trust and confidence that, during the coverture of" the grantor's daughter Sarah, then a married woman, "he shall manage the said slaves, with their future increase, for the sole and separate use of the said Sarah ; and upon the further trust, that if it will conduce more to the comfort of the said Sarah for said slaves and their increase to serve about the house of" her husband, " or to work on his farm or plantation, they are to [so] serve and be employed, and while so employed or engaged, the said" trustee " shall not be required to superintend the management of said slaves,"—confers no interest or power on the husband, but vests in the trustee the entire legal right to the custody and management of the slaves, while it relieves him from responsibility during the time they are allowed to remain about the house, or on the plantation of the husband.

APPEAL from the Chancery Court at Claiborne.
Heard before the Hon. WADE KEYES.

THE bill in this case was filed by Mrs. Sarah Ann

Rainey, suing by her next friend and brother, John J. Olds, against William W. Rainey, her husband; and sought to remove her said husband from the custody and management of her separate estate, and to enjoin an action at law which he had instituted against said Olds, to recover damages for an alleged conversion of slaves belonging to the complainant's separate estate. It appears from the allegations of the bill, that the complainant and her said husband were married in Dallas county, Alabama, on the 19th June, 1842, and lived together as man and wife until December, 1856, when, in consequence of her husband's intemperance, abusive language, and threats of personal violence, the complainant was obliged to leave his house, and to seek refuge with her relatives. On the 6th November, 1847, William W. Olds, the complainant's father, executed a deed of gift, by which he conveyed several slaves to John J. Olds, as trustee, on the following trusts : "that during the coverture between the said William W. Rainey and Sarah Ann, his wife, the said John J. Olds shall manage the said slaves, with their future increase, for the sole and separate use of the said Sarah Ann; and upon the further trust, however, that if it will conduce more to the comfort of the said Sarah Ann for said slaves and their increase to serve about the house of the said William W. Rainey, or to work on his farm or plantation, they are to [so] serve and be employed, and while so employed or engaged, the said John J. Olds shall not be required to superintend the management of said slaves; and upon the further trust, that if the said Sarah Ann shall survive her said husband, the said slaves shall be delivered up to her, as her absolute property, free from the control of all persons; and upon the further trust, that in the event the said Sarah Ann should not survive her said husband, then said slaves shall become the absolute property of her children or descendants, according to the statutes of distribution of this State." Under the provisions of this deed, the slaves conveyed by it were placed on the plantation of the complainant's husband in 1849, and remained under his control until they were taken from his possession by the trustee, as hereinafter

stated. The complainant's father died in August, 1852. At the administrator's sale of the property belonging to his estate, in December, 1853, the complainant purchased a negro, named Joe, "and held the possession of said slave as a part of her distributive share of said estate." In December, 1856, when the complainant left her husband's house, John J. Olds, as her trustee, at her instance and request, took possession of her slaves; and her husband thereupon instituted an action of trover against said Olds, to recover damages for this alleged conversion of the slaves. The bill alleged, that the complainant's husband had become, from habitual drunkenness, unfit for the discreet management of her separate estate; and therefore prayed that he might be removed from the office of her trustee, and enjoined from further prosecuting his action at law against Olds.

An answer on oath having been waived by the complainant, the defendant filed his answer without affidavit, and incorporated in it a demurrer to the bill for want of equity. The chancellor overruled the demurrer for want of equity, but dissolved the injunction; and the dissolution of the injunction is now assigned as error by the complainant.

THOS. WILLIAMS, for appellant.

O. S. JEWETT, *contra*.

STONE, J.—In this case, the complainant waived a sworn answer, and the defendant put in his answer without affidavit of its truth. In such case, the answer cannot be regarded as evidence, on a motion to dissolve the injunction.—Griffin v. State Bank, 17 Ala. 258. This case, then, must be considered and disposed of on the equities as disclosed by the averments of the bill, without regarding the answer save in the light of pleading.

[2.] If the averments of the bill be true, the slave Joe was purchased by Mrs. Rainey after the woman's laws of this State became operative; and consequently, Joe is her separate estate by operation of law, and Dr. Rainey, her husband, is her trustee as to the slave Joe. Mr. Olds, he

brother and trustee, has no title to Joe, and cannot, under the averments of her bill, defend his possession.—See Code, § § 1983, 1986, 1993. Under sections 1994–96 of the Code, the bill, as to the slave Joe, contains equity, and authorized an injunction.—Whitman v. Abernathy, 33 Ala. 154.

[3.] As to the other slaves, the equity of complainant's bill must rest on the construction of the deed of William W. Olds, bearing date Nov. 6th 1847, under which she claims. That deed vests the legal title of the slaves in John J. Olds, in trust "to manage said slaves, with their future increase, for the sole and separate use of the said Sarah Ann." The word *manage* doubtless confers on the trustee more than a naked, or dry trust. . He has, under the deed, unless Dr. Rainey has a paramount title, the legal right to the custody and management of said slaves, and can defend his possession at law. The further trust or discretion conferred on the trustee, in the language that, "if it will conduce more to the comfort of the said Sarah Ann for said slaves and their increase to serve about the house of the said Dr. William W. Rainey, or to work on his farm or plantation, they are to serve and be employed, and while so employed or engaged, the said John J. Olds shall not be required to superintend the management of said slaves," was intended to relieve him from responsibility—not to impair his right, at pleasure, to resume the possession and management; unless, perhaps, Mrs. Rainey, the beneficiary, were complaining of his abuse of the trust confided to him.—See Roper v. Roper, 29 Ala. 247. It evidently confers no powers upon Dr. Rainey. As to these slaves, the bill as framed is without equity.

The decree of the chancellor is reversed as to the slave Joe, and as to him, the injunction is reinstated. Let the costs of this appeal be paid equally by the appellee and by the appellant's next friend.

In other respects the decree of the chancellor is affirmed.